Thank you, Judge Smith, and may it please the Court, Evan Howes on behalf of Ciro Castillo-Santana. So how many arguments is this for you, Mr. Howes? I know it's been a bunch. I'm embarrassed to say that I do know the exact number is 16, and I think you've been present at almost six of them or something like that. So it's a privilege to be in front of the Court again, and here we're talking about an important case, obviously, anytime we're in front of this Court. So, Your Honors, the issue at the heart of Mr. Castillo's trial was whether or not he knew that the individuals that he agreed to give a ride to and drove into the Falfurrias Checkpoint in March of 2020 were unlawfully present in the United States. Of course, the jury at that trial acquitted Mr. Castillo of conspiring to knowingly transport those two noncitizens, but it also convicted him on two substantive counts of transporting the same two noncitizens. That would indicate that the jury was being pretty careful, wouldn't it, and we can infer the jury was listening carefully to all of the instructions that were being given? Maybe, Judge Smith. I do think it's hard to say exactly what we can infer from the fact of the acquittal. I don't want to overemphasize the acquittal and act as though it casts too much doubt on the government's case, but I also want to recognize that, as you say, it represents that the jury may have been being careful. I think the important point about the acquittal is that it does demonstrate that the jurors maintained a reasonable doubt in this trial as to whether or not Mr. Castillo was in cahoots with the passenger who, everybody agrees, was part of this conspiracy, Mr. Lopez-Torres, his fellow Cuban friend, and so that there is some degree of, I guess, weakness, in our view, to the government's case overall. It demonstrates, at the very least, that this was a close one, that the jury was weighing this evidence, and that his knowledge wasn't explicitly clear to the jury beyond what we would say is a reasonable doubt. What we're asking in this case is for this court to either vacate the two substantive convictions and either order judgment of acquittal based on insufficiency of the evidence or to remand for a new trial because of the introduction of two lines of highly prejudicial testimony that were reasonably likely to have influenced the jury's verdict. So I'll start with the sufficiency piece, and then I'll pivot to the trial areas where we get to there. So as we've recognized already, this case was built entirely on circumstantial evidence. And of course, this court and many courts have recognized, long recognized, that mens rea is often provable only through circumstantial evidence. But this court has also recognized that circumstantial evidence still has to meet a certain threshold or standard in order to be sufficient. So I think the general observation that I can give to this panel is that the tipping point in this case is the difference between a circumstantial case that's just probable or speculative, is a word that the court has used before, or in a circumstantial case that's a word that's used to exclude reasonable doubt. And we think this case is the former. Our basic submission is that the circumstantial evidence here is enough for a rational juror to where a rational juror could conclude that Mr. Castillo was aware of these non-citizens' immigration status, but that that same rational juror would necessarily have to leave room for reasonable doubt as to that conclusion. And so what the government complains about in the briefing is that we've relied mostly on the cases from this court or the absence of factors that this court has recognized in other cases as being sufficient to demonstrate knowledge when, you know, the non-citizens are hidden and other situations like that, when they come straight out of the bush or when they have characteristics of individuals who've just been transported over the river, like they smell bad or that they look disheveled, none of those characteristics are here. Now, what we're really doing when we're citing those cases is we're highlighting the comparative weakness of the circumstantial evidence that's present here compared to the circumstantial evidence that was present in those other cases. And the main— Judge Wiener, I'm not exactly sure which comments you're suggesting about illegal immigrants, that if you're referring to the two lines of prejudicial testimony that we've cited in the case, there was one— About the superhuman strength? Right. And so there was—those are the two lines of testimony. There was one about the leftover odor of narcotics or potentially concealed humans, and the other was that Mr. Castillo may have illustrated or demonstrated superhuman strength, and that indicated that he was intoxicated. There is a distinction there, but those two trial errors, we contend—well, it's actually uncontested that the admission of that testimony, both lines of testimony, was erroneous. The only real question is whether or not it was harmful in this case or not, whether it was likely to have influenced the verdict. So if we're going to move over to that issue, I'm happy to address it. And I think that while the two lines of testimony are distinct, Judge Wiener, they do interact, especially on the harmlessness analysis, because you have to look at the timeline of how this testimony came in. The agent tells the jury that a dog alerted to the car when it got to the checkpoint, and then he tells the jury that the dog alerts whenever it smells narcotics, whenever it smells concealed humans, or the derivative odors of those things. That testimony's fine, not objectionable. We move on. Then we go into the superhuman strength. When he gets to struggle with the officers when they've decided to arrest him, he's displaying superhuman strength, and I have—in my experience, I've recognized that people who display superhuman strength are likely intoxicated on illicit substances. So I mean, that is highly prejudicial testimony in itself, and the alert, I think you can reasonably infer, is designed as the prologue to that testimony. We're telling the jury, the dog alerts, and there's a reason the dog has alerted. It might be the presence of substances, and then we're telling the jury, hey, by the way, he had superhuman strength. And so I think that those two things go together, and there's a synergistic effect in whether or not you want to rely specifically on the leftover odor testimony or you want to rely on the superhuman strength testimony. They both do go together to have this overall highly prejudicial effect of suggesting, at a minimum, that Mr. Castillo's a bad guy, he's either a drug trafficker or a user of a drug. He's done a crime that he's concealed humans in his vehicle before recently, and that he's likely an alien transporter, and that's probably what he's doing right now. Tell us about what curative instructions were given. So there were two curative instructions that went only to the leftover odor testimony, and I know it's difficult to keep them in two different compartments, and I'll do that the best that I can. So whenever, about the agent's testimony, Agent Castro's testimony, that the reason the dog alerted is because there was leftover odor of either narcotics or concealed humans, the district judge, sua sponte, at the end of the first day of trial, but not directly after the testimony, instructed the jury, disregard any inference that Mr. Castillo is charged with narcotics or that there were any found. So that doesn't actually go to the problem, because the problem, of course, is the suggestion that he's not charged with narcotics and none were found, but there were narcotics in the car before, and so that he's committed some uncharged narcotics offense. So that first instruction didn't even really go to the heart of the issue, and I think, honestly, that's why Judge Tipton came back the next day. He says to the parties, he brings it up sua sponte again, and he says, look, I've listened to that testimony. I think it was very prejudicial. I'm concerned the jury will weigh it. I would never have let it in if I had known where it was going. I think to ask those questions are inviting error. Those are all things that Judge Tipton said, and that was the reason he decided to give this second curative instruction. Second curative instruction did admonish the jury, do not consider that testimony for any purpose. Right? And so, of course, when a judge gives a strong instruction like that, this Court will err generally on the side that that does the work of curing the prejudice, but there are several factors this Court has recognized in cases like the Escamilla case that we've cited and the Richardson case that Mr. Chappelle has cited in his briefing that recognize when a curative instruction is likely not to have done its job. And so those three factors, and we think all of them are present here, are, one, when the case is circumstantial and not overwhelming as to the particular element that's disputed. Of course, that would be knowledge here. Two, when the testimony was elicited deliberately as opposed to just through inadvertence, basically the witness blurted it out as opposed to it being elicited by the government. That's definitely present here as to both. In fact, the derivative odor testimony was the sole basis for the government's redirect examination of Agent Castro. She did not ask a single other question outside of that testimony designed to get the idea that this dog alerted for a reason. And the reason is because it detected an odor of something it's trained to detect. And then the third factor, besides the other two, is simply how prejudicial the particular content was. There are some pieces of testimony that you don't, you can't really unring the bell for. And drugs, a suggestion that an individual has used or trafficked drugs in a case where that has no place, just like this case, and it's completely unfounded, is the type of thing that the jury is likely to take back into the deliberation room. And so even if you were not entirely sure if the jury would use the drug evidence as evidence towards guilt, you still have the problem in this case that our client testified. And so his credibility was an issue. And so if that testimony caused the jury to distrust our client or to discredit our client's testimony, that is prejudice, right, separate and apart of whether or not they used that evidence and not to consider it in suggesting his guilt. If they think he's a bad guy, they might discredit his explanation for what happened. And they might be more willing to say, well, he must have done something wrong, even if he didn't necessarily do this. And that's... Is that prejudice that you claim, is that to be weighed to some extent against the strength of the government's case? Absolutely. Absolutely. I think the, you know, we've got the two different errors here. One was the testimony was actually stricken from the record, and that's why you have the curative instruction. That's the leftover odor testimony. But then you have the superhuman strength, which was admitted. We objected to every single question in the line. Two of the objections were abstained, but two of them were overruled, excuse me, abstained, sustained. Two of them were overruled. And so we, there was no basis to ask for a curative instruction with respect to those. And so... What about the, as to the hidden illegals? Did the court give any instructions about that testimony? As to the superhuman strength, Your Honor? Well, just the possible pre-earlier presence of illegal aliens in the car. The instruction did not specifically... I don't believe, and Mr. Chappelle can correct me if I'm wrong, and I will look at the record, I don't believe it specifically recognized or explicitly stated that you're not to consider the suggestion of narcotics and concealed humans. But the judge, I mean, Judge Tipton's instructions were designed to say that whole line of testimony, which included concealed humans and narcotics, you shouldn't be considering that. It's stricken from the record. So we acknowledge that, and we don't suggest that the judge gave a bad limiting instruction here, especially as to the second one. What we're suggesting is that the reason the judge gave that instruction is he recognized how prejudicial this testimony was, especially in a close case. The judge recognized on the record that he was very seriously contemplating granting the Rule 29 motion as to the conspiracy count. The jury did that job for him. But the case was still a close one, especially in light of the fact that the jurors maintained reasonable doubt on the conspiracy. And so that is essentially ideal conditions for highly charged prejudicial testimony like this to be the thing that makes the difference in the jurors' minds. And I think that's what we think is the most important part about this case, and that is why, even if you were to find the evidence sufficient, we would urge this court to remand for a retrial without that prejudicial testimony. Thank you, Mr. Howes. You've saved time for rebuttal. OK, is it Chappell or Chappell? It's Chappell, Your Honor. Thank you, Your Honor. May it please the court. Like I said, Brent Chappell on behalf of the United States. We are asking this court to affirm the district court's judgment, first, because the evidence is more than sufficient and, in fact, strongly supports the jury's verdict, and second, because Castillo didn't argue at trial, and he's failed to establish on appeal that he was denied his constitutional right to a fair trial. Again, the government's position is that the evidence here was strong. All that needed to be proven was Castillo's reckless disregard of the illegal status of his teenage passengers. There's been a lot of discussion about how the evidence here was circumstantial in nature, but this court is well aware that circumstantial evidence is just as probative as direct evidence, and as my opposing counsel recognized, circumstantial evidence is the common method by which the government proves mens rea, and that's because it's very rare that someone tells us what they're thinking, and interestingly, Castillo has not identified any case in which this court has held that the evidence was insufficient to show the mens rea in an alien smuggling case. Instead, they viewed each fact, each inculpatory fact, in a vacuum, and it has attempted to make distinctions from other cases in which this court has upheld similar convictions. Let me ask you, Mr. Chappell, on the sufficiency piece, not on the other evidence that's being tested. What has been emphasized and responded to in your brief is how the cases in the circumstantial area, circumstantial evidence area, usually have elements that are not in this case. They aren't disheveled aliens who were in the car. They weren't in hiding, whatever else may be in some of these cases. What is in this case that in the future would be looked to and say that's why there was enough evidence? What is there that weighs enough on your side to get us beyond mere speculation? Sure. So I think that we can look at this in maybe three categories, one being what was Castillo aware of but consciously disregarded regarding the suspicious circumstances of the ride itself. Second, we can look to possible consciousness of guilt in Castillo's nervous and elusive behavior at the checkpoint. And finally, we know that the jury heard Castillo's version of the event. He testified at trial and they were able to assess his credibility. So let's look at the suspicious circumstance of the ride. We know that this was a prearranged ride. We know that it was prepaid via wire transfer of money and specifically via Western Union. There was testimony in the record that this is the most common method by which human smugglers pay one another. $500. $500. That's right, Your Honor. We also know that Castillo drove five hours from Houston to somewhere near the border to pick up total strangers. He was also paid by a total stranger based out of Miami. He picked these people up who were, again, teenagers in a random location. The record was conflicting. It was either a gas station or a Burger King parking lot. But another stranger directed them into the vehicle. And once they got inside, very few words were said. And one critical thing I want to point out is Castillo testified to the jury that these are supposed to be his co-defendant's friends. Yet when they got in the car, his co-defendant introduced himself to them and asked them their names. So clearly, they were not his friends. They were people who were unknown. We also know that the co-defendant, that Castillo knew that his co-defendant did not have legitimate papers to work in the United States, which indicates that this is not a legitimate job. And again, we know that despite all of these suspicious circumstances, in the approximate an hour and a half ride to the Falfurrias checkpoint, Castillo did not ask any questions. So it's this type of deliberate indifference that is indicative of the requisite mens rea, which again, is not knowledge. That is part of what it could be. But the lower standard, which is at play here, is just reckless disregard. And like I mentioned before, Castillo also exhibited nervous and elusive behavior at the checkpoint. So even though these individuals were not hidden in his small four-door sedan, there was still evidence of efforts to prevent their detection. Namely, Castillo spoke on their behalf. He claimed that they were all Cubans, but they were not. We know they were Guatemalans. The seating arrangement was curious. The co-defendant was seated in the rear driver's side of the vehicle. And a reasonable construction of this evidence suggests that the two lawful residents wanted to ensure their encounter with Border Patrol agents on the driver's side. We also know that Castillo didn't bring his cell phone, despite this 10-hour trip overnight. Which, again, a reasonable construction of that evidence is that he sought not to be exposed to evidence on his cell phone. And we know that Castillo was just vaguely answering questions of the Border Patrol agents. When they asked him where he was coming from, he just gestured behind him and said, over there. But in addition to those apparent efforts to prevent detection, he was nervous and possibly evasive. He entered through the commercial lane instead of the passenger lane, despite clear signage to the contrary.  He didn't hand them a photo driver's license, even though we know he has one, because it was sent via cell phone text message to the person who paid him for this ride. And we also know that he didn't follow instructions to the secondary area. Instead, he slowly veered over to the right, near an area of thick brush, where people in the past have been known to abscond. And Agent Castro testified that he was afraid that he was going to run. And finally, he struggled against his detention. He was combative and uncooperative throughout. And it's unsurprising that ultimately, when the jury assessed his credibility, when he testified in front of them, that they did not believe him. It's because he offered implausible and inconsistent explanations. Maybe the primary one being that he claimed that he needed to give these, quote, unofficial Uber-type rides in response to the COVID pandemic affecting his barber business. But this court can take judicial notice under Rule 201-B regarding when the government shutdowns occurred. This occurred on March 15, 2020. At that time, there were no significant government shutdowns. There were no significant economic effects from the COVID pandemic. So it's unsurprising that the jury did not believe him. He also, like I said, claimed that everyone was Cuban, but they were not. He claimed that he didn't take his cell phone because his child was playing with it, but he was going on a 10-hour ride overnight. And like I said before, he claimed that the passengers were supposed to be his co-defendants' friends, but they introduced themselves when they got in the car. So for all these reasons, it's okay that we don't have the fact that these individuals were hidden. It's okay that we don't have, at least in the record, facts that these individuals were smelly or disheveled in appearance. There's still significant evidence to show that he at least recklessly disregarded their  So I want to move on to the second set of issues. I think we can discuss these kind of in two parts, even though they are alleged as one single issue. The first, of course, being the evidence regarding the canine's ability to detect derivative odors, and the second being evidence and a prosecutor's statement regarding Castillo's possible intoxication. So looking at- Tell us first, which of the elicited testimony or the questions that were asked, does the presented to or heard by the jury? So that's a little tricky, Your Honor. I believe the precise error that has been identified on appeal, at least as far as the canine alert, is the denial of a motion for mistrial. And the government's position is that there was no error in the denial of the motion for mistrial. And whether it was improper, I think that's arguable, Your Honor. And I do want to set forth my argument that this should be subject to plain error, and the denial of a motion for mistrial, definitely not clear or obvious. But as to just the erroneous admission of evidence, it's also not clear or obvious. Are you- Well, let me go back to my question. Sure. I was under the impression, maybe it was a misimpression, that the government had conceded that some of the things that occurred in the presence of the jury were error. Is that not correct? It's not correct because of the objections that were raised. Error only exists if the judge does something wrong. And so was it improper, if that's the question? As far as the canine alert, it's arguable. So if we're subject to plain error, it's not clear or obvious. The reason that it's arguable is because there was a purpose for it. It helped explain the canine and the derivative voters and the positive alert, helped explain why Castillo was moved to the secondary inspection area. It also, as the prosecutor on the record mentioned, it responded to defense counsel's solicitation of evidence on cross-examination regarding the absence of concealed humans and the absence of narcotics in this case. Now, going over to the possible intoxication, I'm willing to admit it likely was improper to elicit testimony regarding Castillo's possible intoxication. But that is likewise subject to plain error. And Castillo has failed to show that any impropriety affected his substantial rights. Let me ask you, Mr. Chappell, I'm looking at the transcript about the superhuman strength, which really sounds like a stretch on the part of the prosecutor, but nonetheless, it is what it is. There are an awful lot of objections in here. The court responds to them. Ultimately, he sustains the final objection in the copy that I have. Are you saying the objections were not consistent enough? Or why weren't the objections by defense counsel adequate to preserve, at least, I'm only going to talk about the intoxication right now, to preserve the objection to that? There are two reasons, Your Honor. The first being the objections do not comport with the arguments on appeal. Castillo did not argue that this evidence was overly prejudicial. He did not argue that it denied his right to a fair trial. He objected on grounds of relevance. Let me ask, if somebody says this evidence is not relevant, is it just housecleaning, let's make sure we have only relevant evidence? I mean, I thought implicit in that is that this is harmful to my side and it's not relevant. Are you saying there's some magic words that have to be said about prejudice when you're arguing that it's not relevant? I'm not saying there are magic words, but I'm saying that the objection has to be clear enough that the trial court understands the argument set forth. Well, if it's not relevant but it doesn't hurt, it seems to me the counsel may be wasting the court's time even to object to it. I would think it's implicit that it's prejudicial if I'm objecting to it. I don't think a speculation or relevance objection necessarily implies that there's also a prejudice objection. I'm just helping you out, Your Honor, because you're letting in evidence that is wasting everybody's time. Sure. A waste of time... Is the purpose of the objection? A waste of time indicates that it was not highly prejudicial and did not affect his substantial rights. But the second reason... Do you think it supports that we make a relevance objection if you want to say it was prejudicial when it was overruled, but you have to also say it's prejudicial? Yes, if it's not apparent from the context. So you have case to support that? I do not, other than the difference in the rules, Rule 401 versus 403. Okay. But the second reason that it's subject to plain error is much more straightforward, and that's because an objection was raised, it was sustained, and Castillo did not ask for any further relief. And so this is like the Anderson case, where Castillo effectively received all the relief he requested. And that's the problem with identifying it as... or conceding any type of error, because there was an objection, it was sustained, and there was no further request. And so how did the judge err? But the dispute over the standard of review, going back to the K-9 alert, doesn't affect the outcome. Because even under abuse of discretion, there must be a significant possibility that the prejudicial effect had a substantial impact on the jury's verdict. Here, there's no indication that the prosecutor was acting in bad faith that would increase the possible prejudice. The questioning, like I said before, sought to clarify what was elicited on cross-examination, and it helped explain why Castillo was referred to the secondary area. And even the district judge said on the record, it's page 618, that he did not think the prosecutor was being sneaky. And there were several curative measures here to address that minimum level of prejudice. And like in the Perry case, that was the subject of my 28-J letter, this court should defer to the district court's assessment of prejudice and how it chose to address that possible prejudice. We know here, like in Richardson, as soon as the objection was, or ultimately when the objection was raised, the prosecutor refuted any improper purpose. She said this is not at all a narcotic, or she's not alleging at all that there were narcotics in the vehicle, and that this isn't an alien smuggling case. That's on page 590. At the end of that day, after the mistrial, motion which was denied, which was limited to only narcotics, not human concealment. The argument at the time for the mistrial was, there's no evidence of narcotics in this case at all. In your Perry case, there was no prejudice. Here, it's arguable that there was. Aren't they distinguishable? That is a factual distinction, but the point in relying on the Perry case is that the district court is in the best position to evaluate prejudice and the best possible recourse for that potential prejudice. In Perry, even though the judge said there's no prejudice, he also prohibited the prosecutors from asking additional questions on redirect about that issue. In this case, the district judge openly weighed the level of prejudice on the record, and then decided that the best course of action was to issue another curative instruction. So this was after the judge already specifically instructed the jury that there was no evidence of narcotics in the vehicle in this case, that that evidence was admitted for a limited purpose and they should not consider it. Then at the start of the next day, the judge covered both topics, both the human concealment and the evidence of narcotics, in saying that to the jury, yesterday there was testimony that pertained to the reason Agent Castro's canine alerted to the vehicle when neither concealed people nor narcotics were found in it. The judge went on to say, I want to make clear for the jury that the answers to this line of questioning were inadmissible and are stricken from the record. And the judge also instructed the jury at that time not to consider that evidence. That's at page 624 of the record. And in addition to that instruction, as well as the specific narcotics instruction the day before, there were general instructions that covered this type of testimony that were given to the jury before any evidence was presented, after the evidence had closed, and in writing, back with the jury during deliberations. That included that the lawyer's statements are not evidence, that the jury cannot consider any stricken testimony or any answers to sustained objections, and that Castile was not on trial for any uncharged conduct. In taking a step back, we have to look at what the evidence actually was. There was no evidence that Castile had narcotics previously in his vehicle, or that Castile had concealed humans in his vehicle. The testimony was equivocal. It was maybe somewhere along the way, maybe someone had come in contact, and then that was cut off. And then, finally, after there was the objection, the denial of the motion for mistrial, multiple curative instructions, that evidence was not further emphasized in the record. Was there discussion of it from either side in closing argument? There was a mention by the prosecutor of the canine, but not the ability to detect derivative odors of narcotics or concealed humans. There was no mention. What about defense counsel? From what I recall, there was no mention from that side as well. And critically, this evidence regarding concealed humans and narcotics didn't help establish the fact of consequence. It was made very clear throughout the trial that the disputed issue in this case was mens rea as it related to the alien smuggling cases. It was not a case involving concealed humans. It was not a case involving narcotics. So this is not like Escamilla, where the challenged evidence was a focal point of the entire trial and it was false in Escamilla. It's not like Riddlehuber, where I think this court described the charge defense as just a cog in the wheel of establishing the extraneous evidence. There was in no way a focal point of the trial in this case. Was there any evidence of prior illegal immigrants? Was there any evidence that Castillo had previously smuggled illegal immigrants? Is that the question? Or that there had been any in the car previously? No. There were not. There was not any evidence that other aliens had been in the car previously. And again, it was clearly not alleged in this case. It was made clear multiple times by the prosecutor's statement and argument of both sides that there were no concealed humans in this case. It was not a concealed humans case. The issue was mens rea. Which of the complaints that are before us today to the extent they're preserved and, let me take that out because you're going to object to that part of it, to which of those was there a motion for mistrial? The motion for mistrial was limited to the canine's ability to detect derivative odors of narcotics. That was the only mistrial motion. That's correct. Yes. And that's another reason why clean air applies because there were curative measures after that and there was no renewal of the motion for mistrial or any dissatisfaction with the curative measures. In fact, Castillo's counsel approved of the proposed curative instruction. Was that motion for mistrial the day before Judge Tipton gave his corrective instructions the next following day? I apologize. It was both. There was the denial of the motion for mistrial at the end of that day, so there was testimony in between, but at the end of that day Judge Tipton gave the specific instruction regarding narcotics. There's no evidence of narcotics in this case. It was admitted for a limited purpose. You were instructed not to consider it for any improper purpose. At the start of trial the next day, Judge Tipton came back and gave a broader instruction that covered both concealed humans and narcotics. Instructed the jury not to consider that. And in addition, there were three additional sets of general instructions instructing the jury that he was only on trial for the charged offense. Statements of lawyers are not evidence. Sustained objections are not evidence. But you were giving me that answer, I think, to say there was also a mistrial motion after the second day's... No, Your Honor. The judge... I'm sorry. The judge brought it up on his own at the start of the next day. There was only one motion for mistrial which was denied. And again, there was never a renewal, never any dissatisfaction expressed about the curative measures. And so, quickly touching on the intoxication, again, I argue that it's plain error because there was no contemporaneous objection and Castillo received all the relief that he requested. For similar reasons, did not affect his substantial rights if any error was there. Minimal prejudicial effect, general cautionary instructions, which this court has held as sufficient, in Pittman, for example, and the evidence was strong. So for all these reasons, we ask that this court affirm. Thank you, Mr. Chairman. Mr. House? I do have a few brief points on rebuttal. The first thing I want to address is the preservation problems, or supposed problems, arguable problems that the government has brought up. I don't think that there's a basis at all to argue that we're on plain error on either of these. And so, I will go through the testimony where right now I'm reading from Record on Appeal 562 and it's going to go to 564. As Judge Southwick, you recognized we objected to every single question in the line of the superhuman strength and the point that I'm saying that is only two of those objections were sustained. Two of them were overruled, meaning the we can't ask for a mistrial for testimony that the judge has ruled admissible. I mean, I guess we could, but we've already been told this is admissible. The reason you ask for a mistrial on the derivative odor is that the judge has ultimately sustained our objections, stricken that testimony, but then we're saying that testimony is so bad, you've got to grant a mistrial because it can't unring the bell. When it comes to the superhuman strength and the testimony that's admitted and told and that we're told our objection is overruled, we don't move for a mistrial because we've been told that this is admissible evidence. And so that's why we're not on plain error as to that. That testimony wasn't stricken. So we didn't have any, we couldn't ask for a curative instruction because that testimony came in as admissible and we're saying that it was inadmissible. And of course it was, Judge emphasized that it was unfounded as well. We're talking about what Agent Castro testified is that our client, after he was told he was being arrested, he was pinned to the ground and had his hands under his chest locked like this. The agent testified there were four or five agents on top of him and they couldn't get his arms out. That's 500 pounds. It's not superhuman strength, it's physics. But physics doesn't get you to that prejudicial implication that our client was on drugs at the time that he was arrested. And so I think that demonstrates not only that we preserved that issue, but it was prejudicial. And I have to say, the idea that this testimony was arguably improper I just have to disagree with. This was not just improper testimony. This was egregious. Not for the way that it was presented, but for what it implied. It implied in a close case where an individual who has no criminal history whatsoever and therefore can testify without having to worry about the prosecution cross-examining him on the fact that you've committed crimes in the past, this testimony suggested he had committed other uncharged crimes. And it even suggested he may have committed something very similar to the exact offense for which he was on trial. And so that's why it was absolutely prejudicial to inject this trial with this type of suggestion. And by the way, there's no real reason to put the alert in. I accept that the fact that the alert can happen can come in to explain why they went to secondary. But Agent Shaw, the other agent, testified that we moved them to secondary because we were concerned that none of the passengers had any documentation. They were going to go to secondary anyway. The alert wasn't necessary to show why we're going to secondary. So why do we tell the jury that the dog alerted to the car when there's no drugs and no people concealed found in the car? Because we want them to wonder whether or not those things were there before. And then the agent testifies that when my dog alerts, it alerts to something that it's trained to alert to. He doesn't testify every once in a while. It could be a few minutes. He just says it alerted to something it's trained to detect. And it's trained to detect narcotics, hidden people, or their derivative odors. And that is very problematic. And as to the mistrial motion, we didn't accept the mistrial or that this curative instruction cured everything. What we said was, we think that's the best we can do right now. We'll try to cure it ourselves through our client's testimony, but I think that's all we can do. We didn't say, oh yeah, that's fine, not prejudicial. We just simply said, we agree that that should at least happen and that maybe that can help. And I want to emphasize that Judge Tipton, and this is on record page 620, I believe, recognized before he gave that instruction, he said, I hope that this language is enough to cure the prejudice that he had already recognized. He did not make a specific finding that his client was prejudicial. And so we're asking this Court to recognize the prejudicial nature of this testimony and at least remand for a new trial. Thank you. Thank you, Mr. House. Your case is under submission. You said this is 16 or is this 17? Oh. You're catching up too. You may catch up. All right. Next case for today.